IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Tonia Windham, Wendy VanHorn Shaffer, Esther Rachel Miller, and Debra Ann Underwood,<br><br>    Plaintiffs,<br><br>v.<br><br>Medical University of South Carolina,<br><br>    Defendant. | Civil Action No. 2:19-1306-RMG<br><br>**ORDER AND OPINION** |

This matter is before the Court upon the Report and Recommendation ("R & R") of the Magistrate Judge (Dkt. No. 72), recommending the Court grant Defendant's motion for summary judgment. (Dkt. No. 49). For the reasons stated below, the Court adopts the R & R as the Order of the Court to grant Defendant's motion for summary judgment and dismisses Plaintiff Miller's claims.[1]

**I.    Background**

This lawsuit involves four Plaintiffs: (a) Wendy Vanhorn Shaffer ("Plaintiff Shaffer"); (b) Esther Rachel Miller ("Plaintiff Miller"); (c) Tonia Windham ("Plaintiff Windham"); and (d) Debra Ann Underwood ("Plaintiff Underwood"). Plaintiffs allege individual claims for hostile work environment, sex discrimination, and retaliation in violation of Title VII of the Civil Rights

---

[1] Plaintiff Miller refers to last name as "Brown" in her brief. (Dkt. No. 58). However, she is listed as "Esther Rachel Miller" on the docket. The Court will refer to her as "Plaintiff Miller" in this Order.

1

Act of 1964 ("Title VII") and age discrimination in violation of the Age Discrimination in Employment Act ("ADEA") against Defendant Medical University of South Carolina.[2]

Plaintiff Miller commenced this lawsuit on May 3, 2019 alleging claims for hostile work environment, sex discrimination, and retaliation in violation of Title VII. Plaintiff Miller filed an EEOC Charge on September 5, 2018 alleging claims of hostile work environment, sex discrimination, and retaliation in violation of Title VII. (Dkt. No. 58-1).

Plaintiff Miller alleges that she began working for the Medical University of South Carolina ("MUSC") Department of Public Safety in 2009. (Dkt. No. 58-1 at ¶ 4). She alleges Chief Kerley ("Kerley") is the Chief of the MUSC Department of Public Safety. (*Id.* at ¶ 8). Plaintiff Miller alleges that Kerley emphasized that only officers with a degree would be considered for promotion and encouraged Plaintiff to go back to school. (*Id.*). Plaintiff Miller went back to school and obtained a Bachelor of Science Degree from Columbia College. (Dkt. No. 58-1 at ¶ 10). Plaintiff Miller alleges that, despite the practice and policy of promoting based on education, Kerley promoted white males who did not have degrees. (*Id.* at ¶¶12-13).

Plaintiff Miller alleges that she applied for Active Shooter training and Rape Aggression Defense ("RAD") training, but white males were selected over Plaintiff. (*Id.* at ¶¶ 18-19). Plaintiff alleges she volunteered for RAD and was not selected. (*Id.* at ¶ 20). Plaintiff alleges that she applied for the position of Sergeant in 2016 but a white male was selected for the position. (Dkt. No. 49-4).

Plaintiff filed a complaint with Defendant's Human Resources Department in April of 2018. (Dkt. No. 58-11 at 1). The complaint alleges Defendant created a hostile work environment

---

[2] Plaintiff Dorothy Simmons was dismissed from this litigation on December 10, 2019. (Dkt. No. 12).

through a continued pattern of harassment from Lieutenant Thomas Brooder ("Brooder") on the basis of sex. (*Id.*). Plaintiff filed a second EEOC Charge on April 26, 2021 alleging Defendant and various officers were retaliating against her. (Dkt. No. 58-8).

Defendant filed a motion for summary judgment seeking to dismiss all of Plaintiff Miller's claims. (Dkt. No. 49). Plaintiff filed a response in opposition. (Dkt. No. 58). Defendant filed a reply. (Dkt. No. 66). The Magistrate Judge issued an R & R recommending the Court dismiss all of Plaintiff Miller's claims on summary judgment. (Dkt. No. 72). Plaintiff filed objections to the R & R. (Dkt. No. 79). Defendant filed a response in opposition to Plaintiff's objections. (Dkt. No. 82). The matter is ripe for the Court's review.

## II.     Legal Standard

### A.  Summary Judgment

To prevail on a motion for summary judgment, the movant must demonstrate that there is no genuine issue of any material fact and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). The party seeking summary judgment has the burden of identifying the portions of the "pleadings, depositions, answers to interrogatories, any admissions on file, together with the affidavits, if any, which show there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The Court will construe all inferences and ambiguities against the movant and in favor of the non-moving party. *US. v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). The existence of a mere scintilla of evidence in support of the non-moving party's position is insufficient to withstand a motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). However, an issue of material fact is genuine if the evidence is such that a reasonable jury could return a verdict in favor of the non-movant. *Id.* at 257.

3

"When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "In the language of the Rule, the nonmoving party must come forward with "specific facts showing that there is a genuine issue for trial." *Id.* at 587. "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* (quoting *First Nat'l Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

### B. Report and Recommendation

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility for making a final determination remains with this Court. *See Mathews v. Weber*, 423 U.S. 261, 270 – 71 (1976). This Court is charged with making a *de novo* determination of those portions of the Report and Recommendation to which specific objection is made. Additionally, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(l). In the absence of any specific objections, "a district court need not conduct a *de novo* review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *See Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005) (internal quotation omitted). Plaintiff has filed objections, and the R & R is reviewed *de novo*.

### III. Discussion

#### A. Hostile Work Environment in Violation of Title VII

Upon a careful review of the record and the parties' respective briefing, the Court finds the Magistrate Judge correctly determined there is no issue of material fact that Plaintiff Miller fails to establish a *prima facie* hostile work environment claim.

4

A hostile work environment exists when "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Boyer-Liberto v. Fontainebleau Corp.*, 786 F.3d 264, 272 (4th Cir. 2015). To prevail on a hostile work environment claim, a Plaintiff must show that there was: (1) unwelcome conduct; (2) based on a protected characteristic; (3) which was sufficiently severe or pervasive to alter the conditions of her employment and to create an abusive work environment; and (4) which is imputable to the employer. *Id.* at 277. In presenting evidence of a hostile work environment, a Plaintiff must establish that the environment was "both objectively and subjectively offensive, one that a reasonable person would find hostile or abusive, and that [the Plaintiff] in fact did perceive to be so." *Fudge v. Sentinel Office Payroll Corp.*, No. 2-13-cv-1840-CWH, 2015 WL 5682639, at * 9-10 (D.S.C. Sept. 25, 2015) (referencing *Faragher v. City of Boca Raton*, 524 U.S. 775, 787 (1998)).

When analyzing whether the purported conduct was sufficiently severe or pervasive to establish a hostile work environment, the Court must examine the totality of the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with Plaintiff's work performance." *Fudge*, 2015 WL 5682639, at * 10 (citing *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)). Incidents that would "objectively give rise to bruised or wounded feelings" do not, without more, satisfy the severe and pervasive standard. *EEOC v. Sunbelt Rentals, Inc.*, 521 F.3d 306, 315 (4th Cir. 2008).

Plaintiff Miller alleges Defendant created a hostile work environment based on sex. (Dkt. No. 1 at 18). Plaintiff filed a complaint with Defendant's Human Resources Department in April

5

of 2018. (Dkt. No. 58-11 at 1). The complaint alleges Defendant created a hostile work environment through a continued pattern of harassment from Brooder on the basis of sex. (*Id.*). For example, Plaintiff Miller states that Brooder undermined her by allowing her team members to switch work areas; Brooder preferred a man to wear the "red suit" for RAD training; Brooder commented on how Plaintiff Miller made calls; Brooder commented that a female officer made a mistake while on patrol; Brooder told teams that Plaintiff Miller complained about Brooder to superiors; and Brooder created a reputation for Plaintiff Miller that she was a "backstabber." (*Id.* at 1-3; Dkt. No. 49-4 at 1-4).

Plaintiff Miller testified male officers complained about female officers. (Dkt. No. 49-3 at 14-15). She testified that on one occasion an officer yelled at her when she told him he could not go to the gym. She testified that on another occasion, a subordinate did not give her proper notice before taking leave. (*Id.* at 3-5; Dkt. No. 58-10 at 3-4).

Based on this record, the Magistrate Judge determined that Plaintiff Miller's hostile work environment claim is not sufficiently severe or pervasive to survive summary judgment because Plaintiff Miller alleges rude treatment, lack of respect, and perceived unwanted criticism. (Dkt. No. 72 at 9). Such conduct is insufficient to uphold a hostile work environment claim. *Bouknight v. S.C. Dep't of Corr.*, 487 F. Supp. 3d 449, 475 (D.S.C. 2020); *Combs-Burge v. Rumsfeld*, 170 F. App'x 856, 862 (4th Cir. 2006). Upon a careful review of the record and viewing all evidence in the light favorable to the non-moving party, there is no issue of material fact Plaintiff Miller fails to present evidence that is sufficiently severe or pervasive to establish a hostile work environment claim.[3]

---

[3] Plaintiff Miller objects to the Magistrate Judge's finding and argues she "perceived the environment to be hostile and abusive" to meet the objectivity requirement of a hostile work environment claim. (Dkt. No. 79 at 5). She states that she testified to experiencing derogatory,

### B. Discrimination in Violation of Title VII
#### i. Timeliness

Upon a careful review of the record and the parties' respective briefing, the Court finds the Magistrate Judge comprehensively analyzed Plaintiff Miller's sex discrimination claim and correctly concluded Plaintiff's claim fails on summary judgment.

Under Title VII, a plaintiff is required to exhaust her administrative remedies by filing a charge of discrimination with the EEOC before filing suit. *Sydnor v. Fairfax County, Va.*, 681 F.3d 591, 593 (4th Cir. 2012); 42 U.S.C § 2000e-5(f)(1). In order to maintain an action under Title VII, a party must file an administrative charge with the EEOC within 180 days of the alleged

---

harassing, comments that her male counterparts were not subject to such as being verbally abused, attacked, and belittled by male employees. (*Id.*) (citing Dkt. Nos. 1 at 14-16; 58-11; 57 at 2-6). "The 'severe or pervasive' element has both subjective and objective components*." Mosby-Grant v. City of Hagerstown*, 630 F. 3d 326, 336 (4th Cir. 2010). The objective part helps the courts to "police the baseline for hostile work environment claims." *See Jennings v. University of N.C.*, 444 F.3d 255, 270 (4th Cir. 2006). Plaintiff Miller's perception that Defendant's conduct created a hostile work environment does not create an issue of material fact as to whether the conduct complained of created an objectively hostile work environment. This objection is without merit.

Plaintiff objects to the R & R on the ground the Magistrate Judge failed to consider the following items in the record: (1) the testimony of the co-Plaintiffs, (2) the Psychological Report prepared by Dr. Matthew E. Gaskins (Dkt. Nos. 38-3, 38-4, 38-5, 38-6, 38-7), and (3) the Affidavit of Lieutenant Ernie Brown, a former colleague, (Dkt. No. 58-13) as support for Plaintiff Miller's claim. Dr. Gaskins' psychological report restates the allegations of Plaintiff's hostile work environment claim and how the work environment affected Plaintiff. It does not create an issue of fact as to whether the subject conduct was objectively severe and pervasive. Mr. Brown's Affidavit generically states he has "seen discrimination and hostility in the treatment of female employees and favoritism for male employees in their treatment, promotions, and training." (Dkt. No. 58-13). The Affidavit states that Mr. Brown witnessed harassing and disparaging comments made about Plaintiff Miller and her husband when they took time off together. (*Id.* ). The Affidavit creates no issue of material fact as to Plaintiff Miller's hostile work environment claim. Plaintiff Miller generally states that Defendant engaged in a pattern and practice of unlawful sex discrimination and references the co-Plaintiff's testimony. Plaintiff may not rely on the testimony of co-Plaintiffs as the basis for her individual disparate treatment claim that Defendant engaged in sex discrimination and created a hostile work environment. A private plaintiff cannot maintain a Title VII "pattern or practice" claim outside of a class action setting. *Majeed v. Columbus Cty Bd. of Educ*, 213 F.3d 631 (4th Cir. 2000). Plaintiff's objections are without merit.

7

misconduct. 42 U.S.C. § 2000e-5(e)(1). This period is extended to 300 days in states like South Carolina where state law proscribes the alleged employment practice, and the charge has initially been filed with a state deferral agency. *Williams v. Capstone Logistics LLC*, C/A No. 3:19-2374-JMC-PJG, 2020 WL 9209282, at *8 (D.S.C. Dec. 12, 2020).

Plaintiff Miller alleges that she was unfairly denied: (1) a promotion to sergeant; (2) the opportunity to participate in RAD training; and (3) the opportunity to participate in Active Shooter training. (Dkt. No. 1 at 15-16; Dkt. No. 58 at 4-6; 9-18). Plaintiff Miller applied for the promotion to sergeant in 2016. (Dkt. No. 49-4 at 4). She applied to participate in RAD training in 2015. (Dkt. No. 1 at 6; Dkt. No. 58 at 5). She volunteered for RAD training again in 2016. (Dkt. No. 49-4 at 2). Plaintiff miller contends she applied for Active Shooter training prior to 2016 (*id.*), and was denied the training again in June of 2018. (Dkt. No. 49-1 at 4-5).

Plaintiff Miller filed her charge of discrimination on September 5, 2018 (Dkt. No. 49-2 at 1). The Magistrate Judge determined that three hundred days prior to September 5, 2018 is November 9, 2017. (Dkt. No. 72 at 13). Accordingly, Plaintiff Miller's failure to promote claim is time-barred because the events underlying such claim occurred well outside of the 300-day time-period. (Dkt. No. 49-4 at 4). In addition, Plaintiff Miller's failure to train claims are time-barred to the extent such claims rely on events occurring prior to November 9, 2017. The Magistrate Judge correctly determined that only Plaintiff Miller's failure to train claim based on the June 2018 Active Shooter training is timely. (Dkt. Nos. 49-4 at 2: 49-1 at 4; 72 at 13).

### ii. Merits of Failure to Train Claim Based on June 2018 Active Shooter Training

Upon a careful review of the record and the parties' respective briefing, the Court finds the Magistrate Judge correctly determined that Plaintiff's failure to train claim based on the June 2018 Active Shooter training fails on summary judgment.

When a Plaintiff lacks evidence of discrimination, she must satisfy the three-step burden-shifting framework set forth in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792 (1973), to prevail under a Title VII claim. *See Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 318 (4th Cir. 2005)). Under *McDonnell Douglas*, Plaintiff Miller must first establish a *prima facie* case of sex discrimination. She may make a *prima facie* case by demonstrating: (1) membership in a protected class; (2) satisfactory work performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class, or some other evidence giving rise to an inference of unlawful discrimination. *Ferguson v. Waffle House, Inc.*, 18 F. Supp. 3d 705, 719 (D.S.C. 2014).

If Plaintiff Miller can establish a *prima facie* case of discrimination, the burden shifts to Defendant to show "a legitimate, nondiscriminatory" reason for the adverse employment action. *Ferguson*, 18 F. Supp. 3d at 719. If Defendant provides a legitimate, nondiscriminatory reason for the adverse employment action, the burden shifts to Plaintiff Miller to demonstrate Defendant's asserted justification is a "mere pretext for its true discriminatory motives." *Ferguson*, 18 F. Supp. 3d at 719. In order to do that, Plaintiff Miller must come forward with evidence showing Defendant's reason for the adverse employment action was false and that discrimination was the real reason. *Collins v. Charleston Place, LLC*, No. 2:15-cv-4465-PMD-BM, 2017 WL 3167330, at * 2 (D.S.C. July 26, 2017), *aff'd*, 720 F. App'x 710 (4th Cir. 2018).

Denial of training is an actionable adverse employment action in limited circumstances. *Chika v. Plan Rsch. Corp.*, 179 F. Supp. 2d 575, 584-85 (D. Md. 2002). An adverse employment action must "adversely affect [] the terms, conditions, or benefits of the plaintiff's employment." *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007). Thus, to be cognizable, the adverse employment action must have a "significant detrimental effect" on the employee such

9

as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits. *Peary v. Goss*, 365 F. Supp 2d 713, 722 (E.D. Va. 2005), *aff'd*, 180 F. App'x 476 (4th Cir. 2016); *Hoyle v. Freightliner, LLC*, 650 F.3d 321, 337 (4th Cir. 2011).

Plaintiff Miller alleges Defendant discriminated against her by denying her application for Active Shooter training. (Dkt. No. 1 at 15-16; Dkt. No. 58 at 4-6, 9-18). The Magistrate Judge determined that Plaintiff Miller cannot demonstrate that her inability to participate in the trainings had any "significant detrimental effect" on her employment. *Peary*, 365 F. Supp. 2d at 722. In the objections to the R & R, Plaintiff Miller argues that completing the training would have helped get her promoted. (Dkt. No. 79 at 11-12). She points to the testimony of Major Simmons that training "help[s] an officer in the promotion process." (Dkt. No. 58-6 at 5). The record establishes that this is not the case at Plaintiff Miller's Corporal level. Chief Kerley testified the training may be helpful at the Field Training Officer Level, but it is not taken into consideration when making promotion decisions for Corporals, Sergeants, and Lieutenants. (Dkt. No. 49-7 at 7). Trainings such as Shooter Training are not listed n Defendant's promotion scoring rubric. (Dkt. No. 49-6). The record does not otherwise indicate Plaintiff Miller would be required to participate in these trainings to maintain her current employment or advance in the department. (Dkt. Nos. 1; 49-3; 49-14; 58; 58-6; 58-10; 58-11). The Court agrees with the Magistrate Judge that Plaintiff Miller cannot demonstrate her inability to participate in a specific training had a significant detrimental effect on her employment. Viewing the evidence in a light most favorable to the non-moving party, there is no issue of material fact Plaintiff Miller's sex discrimination claim fails on summary judgment.

## C. Retaliation in Violation of Title VII

Upon a careful review of the record and the parties' respective briefing, the Court finds the Magistrate Judge comprehensively analyzed the issues to determine Plaintiff's retaliation claim in violation of Title VII should be dismissed.

The Magistrate Judge analyzed Plaintiff Miller's claims under the *McDonnell Douglas* pretext framework. (Dkt. No. 72 at 24). Under this framework, Plaintiff Miller must first make a *prima facie* showing of retaliation by proving that: (1) she engaged in a protected activity; (2) her employer took a materially adverse action against her; and (3) there was a causal link between the two events. *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 210 (4th Cir. 2019). To establish the causal connection between the protected activity and alleged retaliation, Plaintiff must establish that the decisionmaker had knowledge she engaged in the protected activity and retaliated against her because of that protected activity. *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 219 (4th Cir. 2007). If Plaintiff can establish a *prima facie* case of retaliation, the burden shifts to Defendant to rebut the presumption of retaliation by articulating a non-retaliatory reason for its actions. *Marzett v. Charleston Cty. Sch. Dist.*, No. 2:14-cv-3932-RMG-MGB, 2017 WL 1274254, at * 10 (D.S.C. Jan. 27, 2017), *adopted*, 2017 WL 589110 (D.S.C. Feb. 14, 2017), *aff'd*, 697 F. App'x 186 (4th Cir. 2017). Plaintiff then bears the ultimate burden of proving the proffered reason is pretext for unlawful retaliation. *Id.*

Plaintiff Miller relies on events outlined in her second EEOC charge to support her retaliation claim.[4] (Dkt. No. 58 at 19-24). Plaintiff Miller alleges that Defendant retaliated against her by: (1) helping a former employee submit a Human Resources complaint against her; (2)

---

[4] Plaintiff's complaint and initial EEOC Charge allege retaliation, but neither document alleges specific retaliatory acts. (Dkt. Nos. 1; 49-2). Plaintiff Miller's response in opposition to Defendant's motion for summary judgment does not clarify the retaliatory acts on which her initial EEOC charge were based. (Dkt. No. 58).

watching her on video surveillance; (3) allowing officers not involved in this litigation to distribute the Complaint to other officers; (4) denying her request to switch shifts with another supervisor so she would not have to work with Brooder; and (5) subjecting her husband, Ryan Brown ("Mr. Brown"), to disciplinary action. (Dkt. No. 58 at 19-21) (citing Dkt. No. 58-6).

The Magistrate Judge determined that only some of these alleged retaliatory acts qualify as "materially adverse." (Dkt. No. 72 at 26); *Perkins*, 936 F.3d at 213. Plaintiff need only show that "a reasonable employee would have found the challenged action materially adverse, 'which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.'" *See id*. The Magistrate Judge determined that allowing officers to view the Complaint underlying this lawsuit is not a materially adverse action under Title VII. *Martin v Merck & Co., Inc.*, 446 F. Supp.2d 615, 637 (W.D. Va. 2006) (finding that the fact the word "lawsuit" was written next to the plaintiff's name on an employee list was an unprofessional action, but not a materially adverse action). Further, the Complaint is a matter of public record. Plaintiff Miller has not alleged an actual injury or harm as a result of other officers reading the Complaint. *Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 67-68 (2006) ("The antiretaliation provision protects an individual not from all retaliation, but from retaliation that produces an injury or harm."). Second, the Magistrate Judge determined that Plaintiff Miller does not explain how Defendant "watc[ing] [her] on the video surveillance for the campus" constitutes a materially adverse action. (Dkt. No. 58 at 19). She does not contend that she suffered harm from Defendant watching its own video surveillance footage. (*Id.*).

Plaintiff objects to the finding of the Magistrate Judge that these acts are not materially adverse. (Dkt. No. 79 at 18-20). Plaintiff argues there is evidence of her injury stemming from Defendant's retaliatory actions. She cites to her deposition testimony and the Independent Medical

12

Examiner Report prepared by Dr. Gaskins. (Dkt. No. 79 at 19) (citing Dkt. Nos. 58-10; 58-12). The deposition testimony cited by Plaintiff does not detail the injury Plaintiff suffered due to Defendant's alleged retaliatory acts. (Dkt. No. 58-10). Dr. Gaskins' report does not reference the alleged retaliatory acts of allowing officers to view the Complaint and Defendant's surveillance of Plaintiff, nor does the report explain how these acts injured Plaintiff. (Dkt. No. 58-12). Plaintiff's objection is without merit. The Court agrees with the finding of the Magistrate Judge that allowing officers to view the Complaint and Defendant's surveillance of Plaintiff are not materially adverse actions. (Dkt. No. 72 at 26).

The remaining acts underlying Plaintiff's retaliation claim consist of the Human Resources complaint filed against Plaintiff, Defendant denying Plaintiff's request to switch shifts, and Mr. Brown's disciplinary action. (Dkt. No. 58 at 19-21) (citing Dkt. No. 58-6). Plaintiff Miller cannot establish causation as to any of these alleged acts.

To satisfy causation Plaintiff Miller must (1) show that the alleged retaliation closely followed the protected activity, or (2) provide a sufficient explanation for the time elapsed between them. *Hinton v. Virginia Union Univ.*, 185 F. Supp.2d 807, 837 (E.D. Va. 2016). The Fourth Circuit has observed that in order for a temporal relationship to support a reasonable inference of retaliatory causation, the temporal relationship must be "very close." *Pascual v. Lowe's Home Ctrs., Inc.*, 193 F. App'x 229, 233 (4th Cir. 2006) (quoting *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (explaining that a three-to-four- month period is too long to establish causation)).

Here, Plaintiff Miller engaged in protected activity in April 2018 when she submitted a complaint to Human Resources and in September of 2018 when she filed an EEOC Charge. (Dkt. Nos. 49-2 at 1; 49-4 at 1). The Human Resources complaint filed against Plaintiff Miller was filed

on October 1, 2019. (Dkt. No. 49-16 at 1). The disciplinary report issued against Mr. Brown was issued on February 19, 2020 and signed on July 28, 2020. (Dkt. No. 49-15 at 1). Plaintiff Miller testified that Defendant would not allow her to switch shifts to avoid working with Brooder in November of 2019. (Dkt. No. 49-3 at 13-14). All of these alleged retaliatory acts occurred more than a year after Plaintiff Miller engaged in protected conduct. Plaintiff Miller does not set forth an explanation for the time elapsed between the protected activity and the alleged retaliation to satisfy the causation requirement. Plaintiff Miller cannot establish causation based on this temporal relationship. *Pascual*, 193 F. App'x at 233.

Upon a careful review of the record and viewing the evidence in a light most favorable to the non-moving party, the Court finds there is no issue of material fact that Plaintiff fails to establish a retaliation claim in violation of Title VII. Defendant's motion for summary judgment is granted as to Plaintiff Miller's Title VII retaliation claim.

## IV.     Conclusion

For the reasons stated above, the Court **ADOPTS** the R & R as the Order of the Court. (Dkt. No. 72). Defendant's motion for summary judgment is **GRANTED.** (Dkt. No. 49).

**AND IT IS SO ORDERED**.

s/ Richard M. Gergel  
Richard M. Gergel  
United States District Judge

January 3, 2022  
Charleston, South Carolina